# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ERIC BARTL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 7653 |
| v. ) | |
| ) | Judge John Z. Lee |
| CITY OF CHICAGO, CHICAGO ) | |
| POLICE OFFICER ELADGIO GASPAR, ) | |
| STAR #8488 and CHICAGO POLICE ) | |
| OFFICER FRANCISCO DUARTE, ) | |
| STAR #10400, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Bartl ("Bartl") brings this suit against Defendants the City of Chicago (the "City") and Chicago Police Officers Eladio Gaspar ("Gaspar") and Francisco Duarte ("Duarte"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("section 1983"). Bartl contends that Gaspar and Duarte wrongfully arrested him while responding to a taxi fare dispute. Additionally, Bartl alleges that the each of the officers failed to intervene while the other was depriving him of his constitutional rights. Bartl also brings state law claims, alleging that the officers conspired to arrest him, that the City is liable for their actions, and that the City should pay compensatory damages due to the officers' wrongdoings.

The City, Gaspar, and Duarte jointly seek summary judgment on Bartl's false arrest claim, arguing that Bartl is collaterally estopped from bringing this claim, or, alternatively, that the officers had probable cause to arrest him. Because the validity of the section 1983 failure to intervene claim depends on whether Gaspar and Duarte wrongfully arrested Bartl, Defendants seek summary judgment on that claim as well. Due to the multiple disputed material facts

involving the encounter that led to Bartl's arrest, the Court denies Defendants' motion for summary judgment on the wrongful arrest and failure to intervene claims. Bartl's state law claims are time barred and Plaintiff makes no effort to defend them; therefore, the Court grants Defendants' motion for summary judgment on those claims.

## Factual Background

The following facts are undisputed, except where otherwise noted. On September 18, 2011, Bartl hailed a cab on the north side of Chicago near the intersection of Crosby Street and Larrabee Street. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1. He and the cab driver promptly agreed on the appropriate route to his destination, a movie theater on the corner of Cermak Road and Cicero Road. *Id.* The cab was to take Interstate 290, exit at Kostner, continue southbound to Cermak, and then turn westbound to Cicero. *Id.* After exiting Interstate 290 but before reaching the move theater, the taxi driver demanded payment, resulting in an argument with Bartl. *Id.* ¶¶ 2-18.[1]

Officers Duarte and Gaspar responded to the scene approximately ten minutes later and began investigating the situation by talking to both Bartl and the taxi driver. *Id.* ¶¶ 18-20. The officers had been informed prior to arriving that there was a dispute between a taxi driver and his customer, who refused to pay. Defs.' LR 56.1(a)(3) Stmt. ¶ 14. Upon arrival at the scene, Gaspar and Duarte began their investigation by questioning the cab driver, followed by Bartl. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 20-22. Unsurprisingly, the two parties presented conflicting stories. Bartl told the officers that he had been held captive inside of the cab after not remitting payment before reaching the agreed destination, and that the cab driver had attempted to attack him following their argument. *Id.* ¶¶ 5, 8, 15, 22. The cab driver, on the other hand, claimed that Bartl had started acting strangely by sticking his head through the partition and screaming.

---

[1] The details of what occurred between the Plaintiff and the taxi driver before the arrival of the police is a matter of dispute, but is immaterial to this motion for summary judgment.

Defs.' LR 56.1(a)(3) Stmt. ¶ 18. After hearing both stories, Duarte made it clear to Bartl that he would be arrested if he did not pay the fare. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 24; Defs.' LR 56.1(a)(3) Stmt. ¶ 25.

What occurred next is a matter of dispute. Bartl claims that he told both Gaspar and Duarte that he would pay the fare and displayed a $20.00 bill that he had in his pocket to both of them. Additionally, Bartl claims that he had at least $100.00 in his wallet with which he could have paid the fare. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 25-27. Though he had responded yes to their inquiries of whether he *would* pay, Gaspar additionally asked Bartl whether he *wanted* to pay. *Id*. ¶ 28. Bartl responded that he did not think that he should have to pay. *Id*. ¶ 29. According to Bartl, officer Gaspar then said, "so you're not going to pay him," to which Bartl repeatedly replied that he would indeed pay. *Id*. Bartl, however, was handcuffed and arrested at this point for failure to pay the cab fare based on a criminal complaint signed by the cab driver. *Id*. ¶ 30; Defs.' LR 56.1(a)(3) Stmt. ¶ 26.

Defendants dispute Bartl's version of events. Instead, they claim that Bartl never took out a $20.00 bill, did not have any money in his wallet, never offered to pay, and is mischaracterizing the way in which the officers asked him to pay his fare. Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 24-30, 32.

As a result of this encounter, Bartl was charged with misdemeanor theft of services and was released on bond about six hours after his arrest. Defs.' LR 56.1(a)(3) Stmt. ¶ 31. The prosecutor, however, voluntarily dismissed Bartl's case and his criminal record was expunged. *Id.* ¶¶ 32-33. Subsequently, Bartl filed a lawsuit in state court against the cab driver and cab company on multiple grounds, including malicious prosecution. *Id.* ¶¶ 34, 37. A jury trial

commenced in October, 2013, and a verdict was returned in favor of the defendants on all claims. *Id.* ¶¶ 35, 39.

### Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

### Analysis

**I.  Section 1983 False Arrest Claim**

Defendants move for summary judgment on Bartl's false arrest claim on three alternative grounds. They first argue that, because Bartl's claim of malicious prosecution was defeated in his state court lawsuit, he should be estopped from bringing a section 1983 false arrest claim. Alternatively, Defendants argue that the officers had probable cause to arrest Bartl, or are shielded by the doctrine of qualified immunity. The court addresses each argument in turn.

4

### A. Collateral Estoppel

Following his arrest and subsequent release, Bartl filed a suit in state court alleging multiple causes of action, including malicious prosecution against the cab driver and company. Defendants argue that because Bartl was unsuccessful on his malicious prosecution claim in state court, he is now estopped from asserting a section 1983 false arrest claim. Their underlying theory is that, in this case, both the state law malicious prosecution and the section 1983 false arrest claim turn on the factual finding of whether the cab driver filed a false criminal complaint against Bartl. Defs.' Mot. Summ. J. 8. According to Defendants, a state court jury already determined that he had not, meaning that this issue should not be relitigated in this forum. *Id*. The Court finds no basis for this argument.

Pursuant to 28 U.S.C. § 1738, federal courts must afford full faith and credit to state judicial proceedings. *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Thus, findings in state proceedings may preclude issues in federal section 1983 actions such as this one. *Id*. Additionally, federal courts must accord the same preclusive effect to a state proceeding as a state court would under its own collateral estoppel standards. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985). In such cases, federal courts must apply the state court's preclusion rules. *Haring v. Prosise*, 462 U.S. 306, 314 (1983).

Defendants are using the theory of defensive collateral estoppel, whereby "a plaintiff [is] estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979). Defensive collateral estoppel promotes judicial economy by stopping a plaintiff from relitigating identical issues simply by "switching adversaries." *Id*. In Illinois, defensive collateral estoppel will be applied when the following requirements are satisfied:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question,
> (2) there was a final judgment on the merits in the prior adjudication, and
> (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005).

A court weighing whether to apply collateral estoppel defensively must address each of the three elements, and if all elements are satisfied, the court must exercise its "broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant[.]" *In re Owens*, 532 N.E.2d 248, 252 (Ill. 1988); *see Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). Relevant fairness considerations include whether the underlying proceeding afforded the plaintiff "a full and fair opportunity to present his case[,]" and the party's incentive to litigate the prior action. *Savickas*, 739 N.E.2d at 451.

Turning to the three-element test, Defendants argue that the issues in dispute are identical because by rejecting Bartl's state law malicious prosecution claim the jury must have "considered, and rejected, Plaintiff's argument that [the cab driver's] criminal complaint against him was false." Defs.' Mot. Summ. J. 8. Defendants attempt to deduce this from instructions given to the jury on the malicious prosecution count:

> With respect to his claims of agency and malicious prosecution, the plaintiff, Eric Bartl, has the burden of proving each of the [seven] following propositions . . . . Fourth, that probable cause, the reasonable belief that an offense was committed by Eric Bartl, did not exist for said judicial proceeding. Fifth, that Mr. Lala acted with malice, which is ill will or the intent to cause harm. Sixth, that the plaintiff, Eric Bartl, suffered damages. Seventh, that the malicious prosecution of Eric Bartl caused by Mr. Lala was the proximate cause of the plaintiff, Eric Bartl's, claimed damages. You are to consider these propositions separately. If you find from your consideration of the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, *if you find from your consideration of all the evidence*

> *that any of these propositions has not been proved then your verdict should be for the defendant.*

*Id*. 7 (emphasis added). Specifically, Defendants argue that the only way the jury could have found against Bartl on the malicious prosecution count is if they found the fourth and fifth element unproven. They furthermore state that the only way that these elements could remain unproven is if the jury implicitly found the cab driver's complaint to be a truthful one. *Id*. 9.

Defendants' inferences do not follow from the given instructions. As noted by the instructions themselves, a finding of guilt would have required *all* elements to be proven, while a finding of innocence would have required that only *one* element was not proven. The jury found that there was no malicious prosecution, thus Bartl did not prove at least one element. Which element that was, however, remains speculation. Unlike a finding of guilt, a finding of innocence does not imply that all of the elements were proven in the negative, but only that one or more elements were deficient. *See generally Joiner v. Benton Cmty. Bank*, 411 N.E.2d 229, 232 (Ill. 1980) (outlining the elements of malicious prosecution under Illinois law and holding that the claim will fail in the "absence of one or more of these essential elements"). As Bartl notes, the jury could have found that the cab driver acted without any ill will or malice by filing a false complaint simply as an attempt to ensure that he would get paid for the trip. Additionally, the jury could have found that the complaint was false, but that the officers still had probable cause to arrest Bartl. Without special interrogatories on the issue, it is impossible to determine what the jury considered, and rejected, in finding that Bartl was not maliciously prosecuted.[2] Therefore, Bartl is not estopped from stating his section 1983 false arrest claim.

---

[2] The jury did answer special interrogatories on the issue of whether an agency relationship existed between the cab driver and the cab company, but they are of no assistance here.

### B. Probable Cause

Alternatively, Defendants argue that officers Gaspar and Duarte had probable cause to arrest Bartl pursuant to the events of September 18, 2011. According to Defendants, the officers were confronted with competing stories, used reasonable diligence in their investigation, and did not purposefully ignore any information that would have defeated probable cause, thus establishing the taxi driver's complaint as sufficient to effectuate arrest. Defs.' Mot. Summ. J. 11. The Court holds that there is a genuine dispute of material fact as to whether the officers acted reasonably in this case.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest[.]" *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). Police officers have "probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (internal quotations and citations omitted). "Moreover, the court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight." *Harney v. City of Chi.*, 702 F.3d 916, 922 (7th Cir. 2012) (citing *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011)).

"The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious[.]" *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). An officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth. *Id.* "In deciding this question of law as

part of a motion for summary judgment, however, we must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Williams v. City of Chi.*, 733 F.3d 749, 756 (7th Cir. 2013).

The court finds that there exists a genuine dispute of material fact as to whether Gaspar and Duarte reasonably believed Bartl had committed or was committing theft of services when Bartl was arrested. Under Illinois law:

> A person commits theft when he or she knowingly obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services.

720 Ill. Comp. Stat. 5/16–3(a). Additionally, the definition of "deception" includes knowingly to

> [p]romise performance which the offender does not intend to perform or knows will not be performed. Failure to perform standing alone is not evidence that the offender did not intend to perform.

720 Ill. Comp. Stat. 5/15–4(e). Thus, the court needs to determine whether a reasonable officer would have believed that Bartl had intended to steal his cab ride through deception or threat.

Two cases involving allegations of theft of services giving rise to false arrest claims, *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336 (7th Cir. 1985), and *Gray v. Burke*, 466 F. Supp. 2d 991 (N.D. Ill. 2006), are illustrative. In *Gray*, a gym patron believed she was mistakenly charged for parking at an adjacent facility and refused to pay the $21.00 fee. 466 F. Supp. 2d at 994. The court noted that factual disputes surrounding the plaintiff's intent weighed in favor of sending the issue of probable cause to a jury.[3] *Id.* at 996-97 ("If our analysis involved determining the existence of probable cause to arrest for theft of services in the first instance, we

---

[3] Ultimately, the court held that probable cause existed on the grounds that plaintiff pled guilty to a charge of disorderly conduct, thereby admitting probable cause for all underlying charges. *Gray*, 466 F. Supp. 2d at 997 (citing *Shkrobut v. City of Chi.*, No. 04 C 8051, 2005 WL 2787277, at *2 (N.D. Ill. Oct. 24, 2005)).

would emphasize the factual disputes that weigh in favor of giving the issue to the jury. It is true that plaintiff repeatedly said that she was not going to pay for the parking, but she also reasonably believed that as a guest at XSport . . . she was entitled to two free hours of parking, and thus had no intention of depriving the parking facility of services."). Furthermore, the court noted that when there is an honest dispute as to the appropriate cost of services rendered and a party offers to pay what he believes is proper, a conviction for theft of services cannot stand. *Id*. at 997 (citing *People v. Mills*, 825 N.E.2d 1227, 1232 (Ill. App. Ct. 2005)).

In *Moore*, a group of patrons was dissatisfied with the service at a restaurant, and after attempting to address the issue with the manager, left the establishment having paid for the food they received but not the totality of food they ordered. *Moore*, 754 F.2d at 1345. The group was later arrested for theft of services. *Id*. at 1340. The court noted that probable cause in this case should be left to a jury rather than addressed on summary judgment because genuine issues of fact existed between the two sides. *Id*. at 1339. The court characterized the dispute as "whether a breach of contract occurred between the parties as to services and food to be provided. One party is dissatisfied with the service after not being served for two hours, while the other party insists upon performance for the services and the food ordered. One party insists that payment was offered for the consumed food, while the other insists that no offer of payment was made." *Id*. at 1345.

Further analysis comes from *Petersen v. Gibson*, 97 C 4123, 1998 WL 474177, at *1 (N.D. Ill. Aug. 7, 1998). While, procedurally, *Petersen* considers the question of probable cause at the motion to dismiss stage instead of at summary judgment, the court approached the issue in a similar manner as in *Moore* and *Gray*. In *Petersen*, a woman was arrested after refusing to pay full price for hair coloring service that had been botched by the stylist. *Id*. The court declined to

find probable cause for the arrest because the arresting officer knew that Petersen was dissatisfied with her service and the parties had attempted to resolve the issue over the course of the day. *Id.* at *2. The court reasoned that Petersen did not show the requisite intent to deceive the salon as required under the statute, but rather gave a very clear reason for her non-payment: her dissatisfaction with the services. *Id*. The officer's argument that "[s]he received services, she knew they cost something, and she refused to pay," was found to be deficient by the court under the language of the statute because, as plainly stated, "failure to perform standing alone is not evidence of deception." *Id.* (citing 720 Ill. Comp. Stat. 5/15–4).

Very similar issues exist in the present case. Like in *Petersen*, Officers Gaspar and Duarte were aware that Bartl was dissatisfied with his service, in that he was not taken to his destination and the driver demanded early payment. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 22, 24. The officers spent enough time with the parties to ascertain that Bartl did not leave the cab unexpectedly in an attempt to deceive the driver, but rather that there was a disagreement as to the terms of the service being performed. *Id*. ¶ 23. The situation is as the Seventh Circuit stated where, "[o]ne party is dissatisfied with the service . . . while the other party insists upon performance for the services." *Moore*, 754 F.2d at 1345. As in *Gray*, there is evidence to suggest that Bartl honestly felt that he should not have to pay the fare. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 29. Like *Moore,* there is also a disagreement between the officers and Bartl as to whether or not Bartl offered payment for the cab ride up to that point. Defs.' LR 56.1(b)(3)(C) Stmt. ¶¶ 24-30, 32.

Defendants argue that the factual dispute about whether Bartl offered payment is immaterial because "[p]robable cause to arrest Plaintiff had already been established; it would not have been retroactively defeated by an act of reparation." Once probable cause has been

11

established there is no duty for an officer to continue the investigation; however, probable cause is determined based on the facts and circumstances within the knowledge of the officer, which can change at a moment's notice. *See Hodgkins ex rel. Hodgkins v. Peterson,* 355 F.3d 1048, 1060 (7th Cir. 2004). So, while officers Gaspar and Duarte were under no obligation to look for a way to help Bartl, once they ascertained the reason for his nonpayment and offered a remedy that Bartl accepted (which the court must assume at this point), the facts and circumstances changed. As noted by the *Petersen* court, "[b]y attempting to mediate the dispute, [the officer] learned facts which weakened or demolished [his] probable cause[.]" *Petersen*, 1998 WL 474177, at *1 n.2. Most presciently, the *Petersen* court examined the *Moore* case and concluded "that a determination of probable cause to arrest for theft of services can be a tricky business which requires a careful investigation and exercise of judgment." *Id.* at *4 n.3. Whether Gaspar and Duarte met their burden in this case is a matter of heavy dispute. Thus, to grant summary judgment while such factual disagreements exist would be inappropriate.

### C. Qualified Immunity

Defendants also claim they are entitled to summary judgment pursuant to the doctrine of qualified immunity. "The question of whether [an officer] had probable cause to arrest . . . is separate from the question relating to qualified immunity." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012). "Qualified immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments." *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"In evaluating qualified immunity, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged

violation." *Williams*, 733 F.3d at 758 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The way that the first inquiry is phrased is reminiscent of the approach to dismissals under Federal Rule of Civil Procedure 12(b)(6) or rulings on summary judgment: the reviewing court takes the record in the light most favorable to the opponent of the motion and asks whether the case can proceed." *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011).

To determine whether a right is "clearly established," "we must look at the right violated in a 'particularized' sense, rather than 'at a high level of generality.'" *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). In the context of a false arrest claim based on lack of probable cause, we have stated that an officer is entitled to qualified immunity "when a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Fleming*, 674 F.3d at 880 (emphasis in original) (internal quotation marks omitted).

Based on the factual discrepancies described above and viewing these disputed facts in the light most favorable to Bartl, the Court concludes that officers Gaspar and Duarte are not entitled to a finding of qualified immunity on summary judgment. For the purposes of this motion, we must assume that Bartl genuinely offered to pay the fare, though he thought he should not have to, and had more than enough money on hand to do so. In this factual scenario, a reasonable jury could infer that police officers in Gaspar and Duarte's situation acted unreasonably in believing that there was probable cause to arrest Bartl after not allowing him to pay the fare owed.

13

## II. Section 1983 Failure to Intervene

Because there is a genuine dispute of material fact as to Bartl's section 1983 claim, the Court also denies Defendants' motion for summary judgment as to the section 1983 failure to intervene claim. Defendants argue that it is a logical impossibility for a section 1983 failure to intervene claim to survive if summary judgment is granted on the underlying Constitutional violation. *See, e.g. Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Here, however, the underlying section 1983 false arrest claim survives, therefore also allowing the failure to intervene claim to proceed. A reasonable jury may conclude that the officers violated Bartl's constitutional rights by arresting him; therefore, a reasonable jury may conclude that one, or both, of the officers had a duty to prevent the other from committing that constitutional violation. Defendants offer no argument in their motion that would entitle them to summary judgment on Count II when Count I survives.

## III. State Law Claims

Finally, Defendants argue that Bartl's state law claims of conspiracy, *respondeat superior*, and indemnification against the City of Chicago are time barred by the Illinois Local Government and Governmental Employees Tort Immunity Act. The act provides that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101(a). Defendants contend that because the incident occurred on September 18, 2011, and this action was not filed until September 25, 2012, the applicable statute of limitations has run. *See, e.g. Henderson v. Bolanda*, 253 F.3d 928, 931-32 (7th Cir. 2001) (finding plaintiff's state law false arrest claim time barred, pursuant to 745

Illinois Compiled Statute 10/8-101, because it was filed more than one year after his arrest). Plaintiff has offered no counter-argument and provided no evidence of tolling or estoppel in regards to the statute of limitations. "The failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory in this court." *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994). Additionally, "[t]he federal courts will not invent legal arguments for litigants." *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995). Therefore, the Court grants Defendants' motion for summary judgment as to the state law claims.

## **Conclusion**

For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part Defendants' motion for summary judgment [44]. Defendants' motion is denied as to the section 1983 false arrest and failure intervene claims (Counts I and II), but is granted as to the state law claims of conspiracy, *respondeat superior*, and indemnification against the City of Chicago (Counts III, IV, and V).

**SO ORDERED**     ENTER: 8/27/14

**JOHN Z. LEE**
**United States District Judge**